United States District Court
Southern District of Texas
**ENTERED**
March 28, 2018
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| OLGA JASSO, § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 1:15-cv-203 |
| § | |
| STATE FARM LLOYDS, § | |
| Defendant. § | |

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

The Court is in receipt of the Supplemental Motion for Partial Summary Judgment filed by Defendant State Farm Lloyds (hereinafter, Defendant's "Motion" or "Motion for Partial Summary Judgment"). Dkt. No. 40. For the reasons provided below, it is recommended that the Court **GRANT** Defendant's Motion.

**I. Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**II. Background**

On November 18, 2015, Defendant State Farm Lloyds removed Plaintiff Olga Jasso's civil action to this Court from the 404th Judicial District Court of Cameron County, Texas. Dkt. No. 2 at 1; Dkt. No. 2-3 at 1. Plaintiff's Original

Petition raised numerous causes of action related to Defendant's alleged breached of its insurance contract with Plaintiff, after a storm damaged her home. Dkt. No. 2-3 at 5-8. Plaintiff moved to voluntarily dismiss some of her claims on July 14, 2017. Dkt. No. 30. The Court granted her request. Dkt. No. 32. Plaintiff's remaining claims assert that: (1) Defendant breached its contract with Plaintiff; (2) Defendant breached its common law duty of good faith and fair dealing; and, (3) Defendant breached its statutory duty of good faith and fair dealing by violating § 541.060 and § 541.152 of the Texas Insurance Code. Dkt. No. 2-3 at 6-7. In addition to actual and consequential damages, Plaintiff seeks attorneys' fees, court costs, prejudgment interest, post-judgment interest, statutory penalties and exemplary damages. *Id*. at 8-10. Defendant asserts that all of Plaintiff's extra-contractual claims and requests for statutory, exemplary damages are subject to summary judgment. Dkt. No. 40 at 2, 6, 20-21.

### III. Legal Standards

FED. R. CIV. P. 56. The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*., *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise

proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson*, 477 U.S. 242, 248. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict. If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. *Id*. at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the resisting party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. 242, 257. All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## IV. Discussion

As noted above, Plaintiff has voluntarily dismissed some of her claims, and her remaining claims allege that: (1) Defendant breached its insurance contract

with Plaintiff; (2) Defendant breached its common law duty of good faith and fair dealing; and, (3) Defendant breached its statutory duty of good faith and fair dealing by violating § 541.060 and § 541.152 of the Texas Insurance Code. Dkt. No. 2-3 at 6-7. Defendant asserts that summary judgment should issue with respect to: (1) Plaintiff's common law and statutory breach of good faith and fair dealing claims (hereinafter, Plaintiff's "extra-contractual claims"); and (2) Plaintiff's request for statutory and exemplary damages. Dkt. No. 40 at 2, 6, 20-21.

In Texas, "[a]n insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *overruled on other grounds*, *Tex. Mut. Ins. v. Ruttiger*, 381 S.W.3d 430, 451 (Tex. 2012)). An insurer will be liable for bad faith if the insurer denies or delays payment on a claim when, at the time of the coverage assessment, "the insurer knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) (citing *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988), *overruled on other grounds, Tex. Mut. Ins. v. Ruttiger*, 381 S.W.3d 430, 451). An insurer's failure to reasonably investigate a claim may also constitute a breach of the duty of good faith and fair dealing. *Id.* (citing *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167). Additionally, an insurer can be liable for breaching the duty of good faith and fair dealing if it

cancels a policy without having a reasonable basis for the cancelation. *Union Bankers Ins. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994).

An insurer's mere mistake in erroneously denying a claim does not constitute bad faith. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994), *superseded by statute on other grounds as recognized in U–Haul Intl. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012). To prevail, the insured must show more than the existence of a bona fide dispute as to the insurer's liability. *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376–77 (Tex. 1994). When determining whether an insurer had a reasonable basis to delay or deny a claim, the court must "review the facts available to the insurer at the time of the denial." *State Farm Lloyds v. Webb*, No. 09–15–00408–CV, 2017 WL 1739763, at *8 (Tex.App.— Beaumont, May 4, 2017) (citing *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)). The court applies an objective standard to determine whether the insurer's decision was reasonable. *Thompson v. Zurich American Ins. Co.*, 664 F.3d 62, 67 (5th Cir. 2011) (citing *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213; *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340). This requires the court to determine if a reasonable insurer under similar circumstances would have delayed or denied payment of the claim. *Id.*

In general, if there is no merit to a plaintiff's common law bad faith claim, then there will also be no merit to their statutory bad faith claim under Chapter 541 of the Texas Insurance Code because the common law and statutory claims require the same predicate for recovery. *Broxterman v. State Farm Lloyds*, 4:14-

CV-661, 2016 WL 482882, at *2 (E.D.Tex., Feb. 4, 2016) ("Texas law holds that extra-contractual tort claims pursuant to the Texas Insurance Code [] require the same predicate for recovery as a bad faith claim under a good faith and fair dealing violation.") (citations omitted); *Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 279 (Tex. App.–San Antonio 2016, pet. denied); *Ortiz v. State Farm Lloyds*, No. 04–17–00252–CV, 2017 WL 5162315, *2 (Tex. App.–San Antonio Nov. 8, 2017, pet. filed) (mem. op.) (same).

Factual disputes regarding whether an insurer reasonably denied or delayed payment on a claim must ordinarily be resolved by a jury. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56. As the Texas Supreme Court has explained:

> [W]e reject the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury. Treating the issue as one of law would undeniably expand this Court's ability to overturn bad-faith judgments. We do not believe, however, that the difficulty of no-evidence review in bad faith cases could possibly justify this judicial sleight-of-hand to circumvent the constraints our Constitution imposes upon this Court. *See Choate v. San Antonio & A.P. Ry.*, 91 Tex. 406, 44 S.W. 69, 69 (1898); Tex. Const. art. V, § 6.
>
> We have long recognized that the Texas Constitution confers an exceptionally broad jury trial right upon litigants. *See State v. Credit Bureau of Laredo, Inc.* 530 S.W.2d 288, 291–93 (Tex. 1975); *Tolle v. Tolle*, 101 Tex. 33, 104 S.W. 1049, 1050 (1907); Tex. Const. art. I, § 15; art. V, § 10. And we have warned that courts must not lightly deprive our people of this right by taking an issue away from the jury. *Young v. Blain*, 245 S.W. 65, 67 (Tex. Com. App.1922, *judgm't adopted, holding approved*). A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question. *Id*. Justice Hecht's concurring opinion identifies no circumstances that make a jury unsuited to decide whether an insurer has denied or delayed payment of a claim after its liability

> has become reasonably clear. We therefore hold that whether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question for the fact-finder.

*Id*. Similarly, a jury must ordinarily determine: (1) whether an insurer reasonably relied upon an expert's report in denying or delaying payment on a claim; (2) whether the expert report was objectively prepared. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997).

Nevertheless, if the insured fails to produce evidence indicating that the insurer's decision was unreasonable, summary judgment may issue. *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *see also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 ("A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence[.]"); *Soto v. Lloyds*, No. 5:15-CV-86, 2016 WL 6883174, at *5 (S.D. Tex. Aug. 19, 2016) ("an insurer may establish its right to summary judgment by showing that there is 'no more than a good faith dispute' as to coverage.") (quoting *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268).

Further, a court may decide whether an expert's report was objectively prepared, or whether the insurer reasonably relied upon that report, as a matter of law, if the insured fails to produce evidence calling the expert's report or the insurer's reliance into question. *Thompson v. Zurich American Ins. Co.*, 664 F.3d 62, 67 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18); *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993); *Guajardo v. Liberty Mut. Ins.*

*Co.*, 831 S.W.2d 358, 365 (Tex. App.—Corpus Christi 1992, writ denied)). The mere fact that the insurer relies upon an expert report that conflicts with other expert reports does not, by itself, establish that the insurer's reliance was unreasonable. *Id*. To avoid summary judgment, the insured must "bring direct or circumstantial evidence" showing that the expert opinion of the insurer "'was questionable[,] and that the carrier knew or should have known that the opinion was questionable.'" *Id*. (quoting *Guajardo*, 831 S.W.2d at 365); *see also Allison v. Allstate Texas Lloyd's*, Civil Action No. 4:16-cv-00979-O-BP, 2017 WL 4991108, at *5–6 (N.D. Tex., Oct. 16, 2017) (summary judgment appropriate where insured failed to produce direct or circumstantial evidence undermining expert reports or insurer's reliance on the reports); *Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, Civil Action No. H-15-1307, 2017 WL 3142444, at *4 (S.D. Tex., July 25, 2017) (summary judgment appropriate where insured failed to produce direct or circumstantial evidence showing that experts' opinions were questionable and that insurer knew or should have known that the opinions were questionable.); *State Farm Lloyds v. Webb*, 2017 WL 1739763, at *9 (insufficient evidence of bad faith where insured failed to offer evidence that expert's report "was not objectively prepared, or that State Farm's reliance on [expert's] report was unreasonable.").

Here, Defendant argues that Plaintiff's extra-contractual claims are subject to summary judgment because Plaintiff has produced no evidence indicating that it acted unreasonably in the processing and payment of Plaintiff's

claims. Dkt. No. 40 at 12-19: Dkt. No. 45 at 4-6. Defendant contends that it timely investigated Plaintiff's claim, and that when it made payments to Plaintiff, it considered the assessments done by its own experts, and Plaintiff's experts. Defendant asserts that its experts found that Plaintiff's expert reports were incorrect and based upon inflated, inaccurate pricing. Defendant notes that Plaintiff has produced no evidence: (1) calling Defendant's expert reports into question; (2) calling Defendant's reliance upon those reports into question; or (3) calling Defendant's investigation into question. *Id*. Therefore, Defendant argues that Plaintiff cannot survive summary judgment. *Id*.

In Plaintiff's "Response" to Defendant's Motion for Partial Summary Judgment, Plaintiff argues that she has produced enough evidence to defeat summary judgment. Dkt. No. 44 at 10.[1] In support of this assertion, Plaintiff relies upon a report prepared by Stuart Nolley of Riverstone Building & Construction. Dkt. No. 23-3 at 1-52. She contends that Nolley's report demonstrates Defendant's bad faith because the costs for repair assessed by Defendant's experts were "less than one-third of Stuart Nolley's estimate[.]" Dkt. No. 23 at 2. Additionally, Plaintiff relies upon the fact that, after making its first payment to Plaintiff, Defendant reassessed Plaintiff's claim and made two additional payments, plus interest, as required by the Texas Insurance Code. *Id*.

---

[1] Plaintiff's Response to Defendant's Motion incorporates her response to an earlier motion for summary judgment filed by Defendant, which the Court denied without prejudice to filing. *See* Dkt. No. 44 at 1 (incorporating all arguments contained in Dkt. No. 23 by reference); Dkt. No. 33 (denying Defendant's first motion for summary judgment without prejudice to refiling).

Plaintiff suggests that these two payments were not timely and demonstrate that Defendant violated the Texas Insurance Code. *Id.*

> There is ample evidence of bad faith in this case: certainly enough to defeat Defendant's Motion for Partial Summary Judgment. For example, State Farm initially estimated the amount of damage to be $6,124.71. The jury will be free to make the factual determination whether State Farm's estimate, coming in at less than one-third of Stuart Nolley's estimate, was made in good faith. The jury is well-suited to make the determination whether State Farm's payment was made timely and in good faith. And all of this is to say nothing of State Farm independently admitting it violated the TEXAS INSURANCE CODE twice. First when it paid Plaintiff $1.30 in statutory interest pursuant to Subchapter B of Chapter 542 of TEXAS INSURANCE CODE on May 11, 2015, and second when State Farm made yet another Subchapter B of Chapter 542 penalty payment of $73.37 on July 13, 2016.

*Id.* (errors in original, record citations omitted).

Plaintiff argues that "[a]ny juror could, upon a showing of Plaintiff's estimates, conclude that rather than 'reasonable' reliance by State Farm on its own estimates was self-serving and done in bad faith—so as to keep its money." Dkt. No. 44 at 6 (errors in original). She adds that Defendant did not make the two additional payments until after she retained counsel, and that this further evidences Defendant's bad faith. *Id.* at 7.

There are several flaws in Plaintiff's arguments. First, Plaintiff has failed to produce evidence which would allow a reasonable jury to conclude that her expert reports were more accurate than Defendant's expert reports. To be clear, the reports in the record prepared by Plaintiff's experts differ from the reports prepared by Defendant's experts in numerous respects. *Compare* Dkt. Nos. 23-3,

40-7, *with* Dkt. Nos. 40-5, 40-6, 40-8, 40-12, 40-14. Still, this fact does not establish that Defendant's reports were inaccurate or unreliable, absent corroborating evidence. *See Zurich American Ins. Co.*, 664 F.3d 62, 67 ("Conflicting expert opinions, by themselves, do not establish that the insurer acted unreasonably in relying on its own expert.") (citations omitted). Plaintiff has not produced corroborating evidence. Specifically, Plaintiff has not produced evidence demonstrating that Defendant's expert reports were biased, based upon incorrect pricing, or otherwise inaccurate; nor has she produced any other evidence indicating that Defendant's reliance upon its expert reports was unreasonable. Moreover, Plaintiff has failed to produce evidence contradicting the Affidavit of Jeff Hunt — an affidavit relied upon by Defendant which provided a detailed argument as to why the reports of Plaintiff's experts were erroneous and unreliable. Dkt. No. 40-14.

At best, Plaintiff has shown the existence of a dispute between the parties, and conflicting expert reports. This showing is insufficient to survive summary judgment as it fails to create a material question of fact on the issue of Defendant's alleged bad faith. *See Zurich American Ins. Co.*, 664 F.3d 62, 67 (court may decide whether an expert's report was objectively prepared, or whether the insurer reasonably relied upon that report, as a matter of law, if the insured only shows the existence of conflicting reports and fails to produce evidence calling the expert's report or the insurer's reliance into question); *Allison v. Allstate Texas Lloyd's*, 2017 WL 4991108, at *5–6 (summary judgment

appropriate where insured failed to produce direct or circumstantial evidence undermining expert reports or insurer's reliance on the reports); *Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, 2017 WL 3142444, at *4 (summary judgment appropriate where insured failed to produce direct or circumstantial evidence showing that experts' opinions were questionable and that insurer knew or should have known that the opinions were questionable.); *State Farm Lloyds v. Webb*, 2017 WL 1739763, at *9 (insufficient evidence of bad faith where insured failed to offer evidence that expert's report "was not objectively prepared, or that State Farm's reliance on [expert's] report was unreasonable."). *See also Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 ("A court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence[.]"); *Soto v. Lloyds*, 2016 WL 6883174, at *5 ("an insurer may establish its right to summary judgment by showing that there is 'no more than a good faith dispute' as to coverage.") (quoting *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268).

Second, Plaintiff has cited no authority to support her argument that Defendant's reassessments and supplemental payments constitute evidence of bad faith. *See* Dkt. Nos. 23 and 44. Defendant states that it conducted its reassessments and issued its supplemental payments in response to new information provided by Plaintiff. Dkt. No. 40 at 18-19. Plaintiff has not contradicted this argument, or otherwise shown that Defendant's supplemental payments were the result of delayed investigation or processing. As Defendant

notes, Plaintiff has failed to refute that: (1) the storm which allegedly damaged her home occurred on May 28, 2014;[2] (2) the "Public Adjuster" inspecting the damage to Plaintiff's home did not contact Defendant until over seven months later, on January 2, 2015;[3] (3) Defendant's adjuster inspected the property on January 20, 2015, and estimated the covered damage to be $6,124.71, despite the lapse of time from storm to inspection;[4] (4) Defendant made a payment to Plaintiff on January 26, 2015, based upon its adjuster's report;[5] (5) on January 30, 2015, Defendant received a letter from Worldwide Public Adjusters on behalf of Plaintiff containing a report prepared by DBM Estimating, which estimated $14,277.87 worth of damage to Plaintiff's home;[6] (6) on February 24, 2015, Defendant's adjuster inspected Plaintiff's home again, and found that the estimate prepared by DBM Estimating was excessive, with a few exceptions;[7] (7) based upon the supplemental assessment of Defendant's adjuster, Defendant issued an additional payment to Plaintiff on February 26, 2015, along with statutory interest;[8] (8) on April 25, 2016, Plaintiff provided Defendant with Nolley's estimate, which found additional damage not previously identified in the estimate prepared by DBM Estimating, or Defendant's experts;[9] (9) Defendant's

---

[2] Dkt. No. 40-4 at 2.
[3] Dkt. No. 40-4 at 2; Dkt. No. 40-5 at 5. Plaintiff does not allege that she submitted a claim to Defendant before January 2, 2015.
[4] Dkt. No. 40-4 at 2; Dkt. No. 40-6 at 2, 8.
[5] Dkt. No. 40-4 at 2-3; Dkt. No. 40-6 at 2.
[6] Dkt. No. 40-4 at 3; Dkt. No. 40-7 at 2-3, 7.
[7] Dkt. No. 40-4 at 3; Dkt. No. 40-8 at 2-3, 6.
[8] Dkt. No. 40-4 at 3; Dkt. No. 40-9 at 2-3.
[9] Dkt. No. 40-4 at 3; Dkt. No. 40-10 at 2, Dkt. No. 40-11.

expert, Jeff Hunt, inspected the property and found that the estimates of Nolley and DBM Estimating were both excessive;[10] (10) despite this, and in an abundance of caution (*see* Dkt. No. 40 at 10, ¶ 14), Defendant made an additional payment to Plaintiff on July 13, 2016, plus statutory interest.[11]

Plaintiff has provided no evidence or authority to support her argument that Defendant's conduct here qualifies as bad faith. As Defendant points out, even now, the evidence before the Court establishes that Defendant's liability was "never reasonably clear." Dkt. No. 40 at 13. Due to factors like the age of Plaintiff's roof, and the passage of time between the storm and the home's first inspection,[12] Defendant's liability may be subject to a bona fide dispute. But, Plaintiff has not produced evidence demonstrating that Defendant denied or delayed payment when it knew or should have known "that it was reasonably clear that the claim was covered." *Giles*, 950 S.W.2d 48, 56.

Third, Plaintiff has not identified any other act or omission on the part of Defendant that qualifies as breach of the duty of good faith and fair dealing. *See* Dkt. Nos. 23 and 44. As Defendant notes, Plaintiff testified during her deposition that she disagreed with the amount that Defendant determined to be owed under her policy, but she did not have any other complaints with respect to how Defendant had handled her claim. Dkt. No. 40-13 at 4, p. 34, lines 15-21. Plaintiff has also produced no evidence that would allow a reasonable jury to

---

[10] Dkt. No. 40-14 at 2-5.
[11] Dkt. No. 40-10 at 2; Dkt. No. 40-12.
[12] *See* Dkt. No. 40-7; 40-11; 40-14.

conclude that Defendant acted knowingly, intentionally, maliciously, fraudulently, or negligently. In short, Plaintiff's evidence demonstrates the existence of a dispute between the parties, and nothing more. Thus, having failed to show that her extra-contractual claims against Defendant can survive summary judgment, her request for damages based upon those claims also fails.

Plaintiff's reliance on *USAA Texas Lloyds Co. v. Menchaca*, —— S.W.3d ——, 2017 WL 1311752, at *3, 6 (Tex. Apr. 7, 2017) does not disturb these conclusions. As Defendant correctly notes, "each and every rule announced in *Menchaca* is dependent upon the existence of a statutory violation" of the Texas Insurance Code. Dkt. No. 45 at 2. Having failed to show that Defendant violated the Texas Insurance Code, Plaintiff has failed to show that *Menchaca* applies to provide her with relief. Plaintiff's extra-contractual claims and requests for statutory, exemplary damages are subject to summary judgment.

## V. Recommendation

For the foregoing reasons, it is recommended that the Court **GRANT** Defendant's Motion for Partial Summary Judgment. Dkt. No. 40.

## VI. Notice to the Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar

that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 28th day of March, 2018.

_____
**Ignacio Torteya, III
United States Magistrate Judge**